CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/22/2020
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:03-cr-70164 |
| v. | MEMORANDUM OPINION |
| GLENN XAVIER WHARTON,<br>*Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Glenn Xavier Wharton's Emergency Motion to Reduce Sentence under the First Step Act of 2018. Dkt. 116. This Court concludes that Defendant is eligible for a reduction in sentence under the First Step Act and will reduce his sentence to 300 months' incarceration. All other terms of Defendant's original sentence will remain the same.

### BACKGROUND

On December 11, 2003, Defendant was charged in a four-count indictment with conspiracy to possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846 (Count I); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count II); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count III); and possession of a firearm after being convicted of a felony, specifically three previous convictions for a felony or serious drug offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count IV). Dkt. 1; Dkt. 117 at 3. Defendant pleaded guilty to Counts I and III of that indictment on May 27, 2004. Dkt. 42.

Pursuant to 21 U.S.C. § 841(b)(1)(A), the offense under Count I triggered a ten-year mandatory minimum sentence of imprisonment at the time of Defendant's original sentencing. His

offense under Count III triggered a five-year mandatory minimum sentence of imprisonment, which was to run consecutive to any other imposed sentence, pursuant to 18 U.S.C. § 924(c)(1)(A)(1). Defendant was sentenced on October 8, 2004 to 262 months' imprisonment as to Count I and a consecutive 60 months' imprisonment as to Count III, for a total term of imprisonment of 322 months. Dkt. 61. He was further sentenced to five years of supervised release as to Count I and three years as to Count III to run concurrently. *Id.* As of April 2020, he has served approximately 199 months of his sentence.

Defendant, through counsel, filed the instant motion on May 5, 2019, pursuant to the newly enacted First Step Act. Dkt. 116.

## First Step Act Legal Framework

Section 404(b) of the First Step Act, the provision under which Defendant seeks relief, states that:

> Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2019). The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by [S]ection 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222. A later provision, Section 404(c), further states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* § 404(c), 132 Stat. at 5222. A district court's decision whether to afford relief to an eligible defendant under the First Step Act is a discretionary one. *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019).

2

Modifications of sentences pursuant to the First Step Act are governed by 18 U.S.C. § 3582(c)(1)(B), which states that "[t]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See also Wirsing*, 943 F.3d at 183 ("We hold that § 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion."). And, in determining a defendant's eligibility under § 3582(c)(1)(B), a court "must look to the applicable statute to determine 'the extent' to which modification is 'expressly permitted by [that] statute.'" *Id.* at 185 (quoting 18 U.S.C. § 3582(c)(1)(B)). In determining if modification is appropriate, the Court will first address whether a reduction is consistent with the First Step Act and will then "consider whether the authorized reduction is warranted, either in whole or in part, according to the facts set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010).[1]

Covered Offense

The parties agree that Defendant's convicted offense under Count I is a "covered offense" as defined by the First Step Act and do not dispute that the 60 months' imprisonment imposed as a result of his firearms conviction on Count III remains unaltered by the First Step Act. The offense under Count I was committed before August 3, 2010, and the applicable penalties were modified

---

[1] Although subsection 3582(c)(1)(B) does not reference 3553(a) as do other 3582(c) subsections, that alone does not bar consideration of other factors. While the *Dillon* Court analyzed the procedures under § 3582(c)(2), the language quoted is reflected in § 3582(c)(1)(B). Additionally, this approach is mirrored by the Fourth Circuit's analysis under Rule 35(b), which allows the Court to "consider other sentencing factors . . . when deciding the extent of a reduction." *United States v. Davis*, 679 F.3d 190, 195 (4th Cir. 2012); *see also* United States Sentencing Commission, Office of Education and Sentencing Practice, *FIRST STEP Act*, https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last visited Feb. 11, 2019). ("[T]he courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing."); *United States v. Hardnett*, ___ F. Supp. 3d ___, 2019 WL 5445887, at *8 (E.D. Va. Oct. 24, 2019) (outlining that the Court must first examine whether a sentence modification is warranted by the First Step Act and then consider whether a reduction is appropriate after considering the § 3553(a) factors)

by Section 2 of the Fair Sentencing Act, which "reduced the statutory penalties for cocaine based offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). As relevant in this case, Section 2 of the Fair Sentencing Act increased the drug quantities necessary to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Pub. L. No. 111–220, 124 Stat. 2372 (2010). Specifically, the threshold requirement to trigger the mandatory minimum sentence of ten years under 21 U.S.C. § 841(b)(1)(A) was increased from 50 grams to 280 grams, placing Defendant's 66.32 grams of cocaine base, Dkt. 43 at 3; Dkt. 117 at 5, below the revised threshold. *Id*.

<u>Career Offender Status Under the U.S. Sentencing Commission Guidelines</u>

At the time of his initial sentencing, Defendant qualified as a career offender under U.S.S.G. § 4B1.1 because he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. Dkt. 117 at 6. Consequently, he was then subject to the Guidelines' Chapter 4 sentencing enhancements for career offenders. Defendant claims that he would no longer be considered a career offender if sentenced today and so that designation is not appropriate when considering his revised guideline range pursuant to the First Step Act. The Government disagrees, arguing that the First Step Act does not permit the Court to re-open this type of settled Guidelines determination, regardless of whether he would be considered a career offender under the revised Guidelines. The difference in range is significant. Without the Chapter 4 sentencing enhancement for career offenders, Defendant's guideline range for Count I under the First Step Act would be 77 to 96 months, plus 60 months consecutive on his § 924(c) conviction under Count III. With this sentencing enhancement, however, the minimum for Defendant's guideline line range as to his offense under Count I would more than quadruple.

4

Courts in this district have previously found that the First Step Act is an improper vehicle for modifying a defendant's status as a career offender based on changes in the case law since the sentencing. *United States v. Williams*, No. 5:06-cr-14, 2019 WL 5967968, at *7 (W.D. Va. Nov. 13, 2019) (Urbanski, C.J.) (citing *United States v. Drake*, No. 1:07-cr-53-1, 2019 WL 5213923, at *5 (N.D. W. Va. Oct. 16, 2019)); *United States v. Robinson*, No. 5:06-cr-14, 2019 WL 5967967, at *5 (W.D. Va. Nov. 13, 2019) (Urbanski, C.J.) (finding the First Step Act does not authorize courts to re-open career offender status determination based on developments in case law after defendant's initial conviction) (citing *United States v. Hegwood*, 934 F.3d 414, 416 (5th Cir. 2019)). The Fourth Circuit seems to have at least indirectly supported this approach in its recently published opinion in *United States v. Venable*, when it quoted to the Fifth Circuit's instruction that "the district court should place itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated in the 2010 Fair Sentencing Act." 943 F.3d 187, 194 n.11 (4th Cir. 2019) (citing *Hegwood*, 934 F.3d at 418) (internal quotations omitted). Nevertheless, courts in this district—including this one—have taken into consideration the effect of intervening changes in the Guidelines for purposes of its § 3553 analysis. *See, e.g.*, *Robinson*, 2019 WL 5967967, at *7 (stating that "although the court declines to modify the career offender designation, it notes that if Robinson were sentenced today, he would not be considered a career offender and his drug offense guideline would be [lower]"); *United States v. Maurice Lewis*, No. 3:08-cr-00039, ECF No. 124 at *4 (W.D. Va. May 8, 2019) ("The court does not reach the reconsideration of Defendant's career offender status, but does take into consideration the fact that, if Defendant was sentenced under current law, his sentence would be significantly lower") (Moon, J.); *United States v. Newton*, No. 5:02-cr-30020, 2019 WL 1007100 (W.D. Va. Mar. 1, 2019) (declining to reach the issue of whether the court could change a career

offender designation because the Court could take "into account the advisory nature of the Guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a))" (Urbanski, C.J.).

The Court need not address in this case whether it is appropriate to consider how a change in career offender status would result in a lower sentencing range if Defendant were sentenced today. This is because, as the following analysis explains, the Court concludes that Defendant *would* be considered a career offender even if he were sentenced today.

The current version of § 4B1.1(a) of the U.S. Sentencing Guidelines reads,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The Guidelines define a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that has an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2. Defendant was at least eighteen years old at the time he committed the drug trafficking offense of conviction under Count I, and that offense is a qualifying one for purposes of determining career offender status under the Guidelines.

As to the third prong, it is clear that Defendant already has one qualifying prior conviction on his record—a controlled substance offense committed in Maryland from 1993. *Id.* at 8. But Defendant argues that the other three of the four qualifying convictions that the Court relied upon in 2004 when making its career-offender status determination (one second-degree assault and two third-degree assaults in New York, Dkt. at 6, ¶ 22) would no longer be considered qualifying convictions if he were sentenced today. Specifically, Defendant contends without elaboration that these assault offenses were considered qualifying crimes for career-offender status under the 2003

6

Guidelines' residual clause for crimes of violence, which was eliminated by the United States Sentencing Commission in 2016. *Compare* U.S.S.G. § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2015), *with* U.S.S.G. § 4B1.2(a) (U.S. Sentencing Comm'n 2016).[2] Therefore, Defendant argues that if he were sentenced under current law, he would not be designated as a career offender and his guideline prison sentence would be 77 to 96 months, plus 60 months consecutive on his firearms charge.

When evaluating whether a prior conviction constitutes "a crime of violence," courts apply the "categorical approach," which analyzes the elements of the criminal offense itself, rather than the specific facts that led to Defendant's prior conviction. *United States v. Shell*, 789 F.3d 335, 338 (4th Cir. 2015) ("What matters for the categorical approach is how the law defines the offense generically, and not the particulars of how an individual might have committed the offense on a given occasion."). And so, the Court must assess whether the full range of chargeable conduct covered by these New York assault provisions would qualify any one of them as a crime of violence under the Guidelines. *See id.*

The New York statute criminalizing assault in the second degree is a divisible statute, as it "sets out one or more elements of the offense in the alternative." *United States v. Peña*, 762 F. App'x 34, 36–37 (2d Cir. 2019) (concluding the same) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). It is not clear from the Presentencing Report filed in this case which species of second-degree assault to which Defendant pleaded guilty. But the Certificate of Disposition Indictment from the Supreme Court of the State of New York in Bronx County, as provided to the Court by the federal probation office, indicates that Defendant pleaded guilty to second-degree

---

[2] The now removed residual clause stated that a prior conviction would count as a "crime of violence" where the underlying conduct "present[ed] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2015).

assault under 120.05(2) and was sentenced to four years' imprisonment. *New York v. Wharton*, No. SCI-5784-96 (N.Y. Crim. Ct., Bronx Cty.) (Certificate of Disposition Indictment, No. 1744, March 3, 2004).³ The relevant provision criminalizing this kind of assault states—both today and at the time Defendant was charged—"A person is guilty of assault in the second degree when . . . (2) With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.05(2) (McKinney 2019).

The Second Circuit has previously held that this offense is categorically a crime of violence under the Guidelines, and I agree. *Brunstorff v. United States*, 754 F. App'x 48, 49–50 (2d Cir. 2019). As the Second Circuit has reasoned, "to . . . cause physical injury by means of a deadly weapon or dangerous instrument is necessarily to . . . use 'physical force,' on any reasonable interpretation of that term." *Id.* (quoting *United States v. Walker*, 442 F.3d 787, 787–89 (2d Cir. 2006)) (alternations omitted).  The Fourth Circuit has made it clear that its focus on the minimum conduct required for conviction does not give litigants or courts "a green light to conjure up fanciful fact patterns in an attempt to find some nonviolent manner in which a crime can be committed." *United States v. Covington*, 880 F.3d 129, 135 (4th Cir. 2018) (internal citations and alterations omitted). The way the New York statute is written, there is simply no non-fanciful means by which a deadly weapon or dangerous instrument could be used to cause physical injury without the use of physical force. *See id.* (noting that the U.S. Supreme Court's decision in *United*

---

³ The district court's inquiry as to whether a prior conviction was for a "crime of violence" is limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Peña*, 762 F. App'x at 37 (applying this standard to documents providing information on the underlying offenses to determine career offender status under the Guidelines).

*States v. Castleman*, 572 U.S. 157 (2014) abrogated the Fourth Circuit's distinction between indirect and direct force in defining a "crime of violence" under the Guidelines). Defendant thus has at least two qualifying prior convictions on his record—his drug trafficking conviction in Maryland and second-degree assault conviction in New York—qualifying him for career offender status even if he were sentenced today. Therefore, the Court need not address whether Defendant's other two assault charges might be considered crimes of violence under the Guidelines.

## Guidelines Calculation

According to the Presentencing Report filed in this case, Defendant's initial sentencing guideline range, taking into account a career offender enhancement pursuant to U.S.S.G. § 4B1.1, was 322–387 months' imprisonment. Dkt. 117 at 6. The Court imposed a sentence of 322 months' imprisonment. Dkt. 61. Under the First Step Act, Defendant's new base offense level is 24, U.S.S.G. § 2D1.1, with a three-point reduction for acceptance of responsibility, Dkt. 117 at 6. With a total base offense level of 21, his guideline range would total to 77 to 96 months. But, as Defendant maintains a career offender status, he is subject to career-offender sentencing enhancements under Chapter 4 of the Guidelines. U.S.S.G. § 4B1.1

As Defendant's drug trafficking offense carries a statutory range of five to forty years' imprisonment, 21 U.S.C. § 841(b)(1)(B), Defendant would typically have a career offender level of 34, pursuant to § 4B1.1(b). But Defendant was convicted of two counts, one of which was an offense under 18 U.S.C. § 924(c) (Count III). Therefore, the alternative career-offender guideline-range calculation scheme under § 4B1.1(c) applies.

Pursuant to § 4B1.1(c)(2), the Court first adds the mandatory statutory minimum from Defendant's § 924(c) offense to the otherwise applicable guideline range from § 4B1.1(a), then compares that increased range with the applicable range from § 4B1.1(c)(3). The appropriate

9

guideline range is that which carries the higher minimum. Here, Defendant has a career offense level of 34, with a reduction of three points for acceptance of responsibility and a criminal history category of VI, which would carry a guideline range of 188 to 235 months. When adding the 60-month statutory minimum from Defendant's 924(c) conviction, that range increases to 248 to 295 months. Applying § 4B1.1(c)(2)(B), Defendant's career offender guideline range from § 4B1.1(c)(3) is 262 to 327 months. As § 4B1.1(c)(3) carries a higher minimum of 262 months, 262 to 327 months is the applicable guideline range for Defendant's drug trafficking conviction under Count I. When adding Defendant's statutory mandatory minimum for his firearms conviction under Count III, Defendant's total guideline range for all convictions is 322 to 387 months.

After consideration of the factors enumerated in § 3553(a) as well as the parties' arguments, the Court determines that a reduction of Defendant's sentence to 300 months is appropriate. In making this determination, the Court has considered Defendant's history and characteristics, including his age, and the over seventy-five educational courses he has taken while incarcerated, as well as the nature of his disciplinary record while in custody. All other terms of his original sentence will remain the same.

## Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Reduce Sentence pursuant to the First Step Act. The Court finds that Defendant has committed a "covered offense" under the terms of the Act, and the Court will grant him a reduction in his term of incarceration, reducing it to a total of 300 months. The Court finds 300 months' imprisonment is sufficient—but not greater than necessary—and accounts for the sentencing factors the Court must consider

pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law. All other terms of the original sentence will remain the same.[4]

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to Defendant, all counsel of record, the United States Probation Office, and the United States Marshals Service, for delivery to the Bureau of Prisons.

Entered this 22nd day of April 2020.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] Even assuming the Court is authorized to grant a reduction in Defendant's term of supervised release pursuant to a First Step Act motion, it declines to do so here. 18 U.S.C. § 841(b)(1)(B) states, "Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of <u>at least</u> 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of <u>at least</u> 8 years in addition to such term of imprisonment." (emphasis supplied). Nothing in the statute prevents the Court from increasing this term of supervised release beyond the minimum, and the Court believes that the history and characteristics of the defendant call for such a measure in this case. If Defendant wishes to petition the Court for early termination of his term of supervised release, he is of course welcome to do so one year after his term of supervised release has begun. 18 U.S.C. § 3583(e).